GENERAL COURT, (E. S.) APRIL TERM, 1802.

RICHARDSON's Lessee *vs.* PARSONS.

EJECTMENT for *Richardson's Discovery* and *Conclusion,* lying in Worcester county.

The counsel for the defendant objected to the verdict in a former suit being evidence, because the judgment was reversed for error in fact, the defendant having died before the verdict was taken; and they cited 1 *Stra.* 162. 1 *Morgan's Essays,* 94. *Gilb.* 63. *Showers Parl. Cases.*

*A verdict in a former suit where the judgment was reversed for error in fact, is not evidence in a trial on a new ejectment*

CHASE, Ch. J. The court are of opinion, that the verdict cannot be received as evidence, inasmuch as the judgment was reversed for error in fact, the defendant being dead at the time and two days before the verdict was given. The judgment being reversed on that ground, there was no legal trial or verdict in the case.

*Hammond* and *Bullitt,* for the Plaintiff.

*Martin,* (Attorney General,) and *Harper,* for the Defendant.

GENERAL COURT, (E. S.) APRIL TERM, 1802.

GIBSON's Lessee *vs.* SMITH.

EJECTMENT for a tract of land called *Robert and Margaret,* lying in Talbot county. Defence on warrant, and plots returned.

*Where a grant of a tract of land described it as lying on the E. side of Chesapeake bay, and on the S side of a river in*

the said bay called St. Michael's river, *next adjoining* the land of *HM,* beginning at the said *HM's* northermost bounded oak, running NE and by N up the river for breadth 175 perches, to a marked pine by a marsh, bounding on the E by a line drawn S and by E from the said pine for length 320 perches, on the S by a line drawn SW and by S for breadth from the end of the S and by E line *until it intersect a parallel drawn from the land of HM,* on the W with said land and parallel, on the N with said river, containing, &c. *Held,* that the said tract be located from its beginning to the place where the second bounder thereof stood, and from such place, according to the course and distance expressed in the grant, running 320 perches to the end of the second line, according to such course and distance, and from thence, according to the course and distance expressed in the grant for the third line, to tne place where the third line shall intersect with a parallel drawn from *HM's* land, and from thence, according to the grant, to the beginning, (the jury finding from the evidence the places where the second bounder stood, and where the third line intersected with the parallel,) although such location runs the tract across the land of *HM*

A record in an action of *trespass q. c. f.* between parties under whom the plaintiff and defendant in *ejectment* claim, read in evidence, &c

A land commission defectively executed, may be read in evidence to prove the commission had issued, but for no other purpose

1. The plaintiff at the trial offered in evidence to the jury the patent of the tract of land called *Robert and Margaret,* surveyed on the 16th of May 1763, for, and granted to *Robert Newcomb* on the 18th of June 1766, in virtue of an escheat warrant on a tract of land called *Harbour Rouse;* also the will of the said *Newcomb,* dated the 9th of March 1790, devising that part of the said tract of land for which this ejectment is brought, to his grandson *James Newcomb;* also a deed of conveyance for the said land from the said *James Newcomb* to the lessor of the plaintiff, dated the 10th of December 1793; also the location of the said land on the plots returned in this cause; also the certificate and patent of a tract of land called *Harbour Rouse,* surveyed for *Anthony Griffin,* on the 26th of July 1659, and granted to him on the 13th of February 1659, and the location thereof on the plots by the plaintiff.

The defendant offered in evidence the certificate and patent of a tract of land called *Harryton,* surveyed on the 26th of July 1659, for, and granted to *Henry Morgan,* on the 13th of February 1659, "lying on the "E. side of Chesapeake bay, and on the E. side of a "river in the said bay called St. Michael's river, be-. "ginning at the northermost bounded tree of *Anthony* "*Griffin's* land, running NNE. up the river for the "breadth of 150 perches, to a marked oak at the "mouth of a creek called *Kirke's* Creek, bounding on "the N. by a line drawn E. up the creek for length "320 perches, on the E. by a line drawn SSW. from "the end of the E. line until it intersect a parallel "drawn from the land of *Anthony Griffin,* on the S. "with the said land, on the W. with the said river, "containing 270 acres." The defendant also offered in evidence, the certificate and patent of a tract of land called *Kirkham,* surveyed on the 28th of July 1659, for, and granted to *Michael Kirke* and *John Hill* on the 7th of January 1659, "lying on the E. side of "Chesapeake bay, and on the S. side of a river in the "said bay called St. Michael's River, *next adjoining* "the land of *Henry Morgan,* beginning at the afore-

"said *Morgan's* northermost bounded oak, running N.
"E. and by N. up the river, for breadth 175 perches,
"to a marked pine by a marsh, bounding on the E,
"by a line drawn S. and by E. from the said pine for
"length 320 perches, on the S. by a line drawn SW.
"and by S. for breadth from the end of the S. and by
"E. line, *until it insersect a parallel drawn from the*
"*land of Henry Morgan*, on the W. with said land and
"parallel, on the N. with the said river, containing
"350 acres." The defendant also offered in evidence
the locations of the two last mentioned tracts of lands,
as laid down by him on the plots as his defence.

April 1802

Gibson
vs.
Smith

Whereupon the plaintiff prayed the opinion of the
court, and their direction to the jury, that the said
tract of land called *Kirkham*, according to its true lo-
cation, and according to the true construction of the
certificate and patent thereof, could not be laid down
so as to run across the said tract of land called *Har-
ryton*, but must be laid entirely to the northward there-
of, and adjoining thereto.

CHASE, Ch. J.(a). The Court are of opinion,
that the direction as prayed by the plaintiff ought
not to be given—But the Court are of opinion,
and so direct the jury, that the tract of land
called *Kirkham* ought, according to the true con-
struction of the certificate and patent thereof,
to be located and laid down from its first begin-
ning to the place where the jury shall be of opi-
nion, from the evidence to be produced to them, the
second bounder thereof stood, and from such place
according to the course and distance expressed in the
certificate and patent, running 320 perches to the end
of the second line according to such course and dis-
tance, and from thence according to the course ex-
pressed in the certificate and patent for the third line
of the tract to the place where the third line shall, in
the opinion of the jury from the evidence to be offered
to them, intersect with a parallel drawn from the
tract of land called *Harryton*, and from thence, ac-

(a) *Duvall* and *Done*, J. concurred,

April 1802

Gibson
vs.
Smith

A record in an action of *trespass q. c f.* between parties under whom the plaintiff and defendant in an *ejectment* for the same land, severally claim, read in evidence, &c

A land commission defectively executed, may be read in evidence to prove the commission had issued but for no other purpose

cording to the certificate and patent, to the beginning of the tract called *Kirkham*. The plaintiff excepted.

2. The defendant to prove the second boundary of the tract of land called *Kirkham*, as located by him on the plots, offered in evidence the record of a suit which had been brought in the late provincial court by *Robert Newcomb* against *Jacob Hindman*, under whom the defendant claims; by which record it appeared that an action of *trespass q. c. f.* had been instituted, for a trespass committed on the tract of land called *Robert and Margaret*; that the defendant in the said action pleaded *non cul* and *liberum tenementum* of a tract of land called *Kirkham*; that a warrant of resurvey issued, and plots with the depositions of sundry witnesses were returned; and that a trial was had at April term 1760, when the defendant obtained verdicts and judgment. The defendant also offered in evidence, that the plaintiff derives his title to the land for which this ejectment is brought, and claims under the said *Robert Newcomb*. The defendant further offered in evidence, to establish the said second boundary, the testimony of witnesses, who swore they had been shewn the same by a certain *Francis Morling*, who lived and had been brought up about 300 yards from the place, as the second boundary of *Kirkham*, and that he then declared he had received his information from *James Condon* and one *Winchester*. The defendant then produced and offered to read in evidence, a record of a commission issued at the instance of the said *Jacob Hindman*, to commissioners, to take depositions respecting the boundaries of the said land called *Kirkham*, together with the return thereof, and the manner the commissioners had executed the same, except the depositions taken, which the defendant did not offer to give in evidence. The record of the commission and return states, that "on the 13th of March 1744, his lordship's commission for the examination of evidences concerning their knowledge of the bounds of part of two tracts of land called *Kirkham* and *Harrington*," &c. "was is-

sued directed to *James Edge*, &c. which commission is set forth; and that *William Thomas*, &c. two of the said commissioners, made return of the said commission to the county court held in November 1747, certifying as follows, viz. "To the worshipful the justices of Talbot county. These are humbly to certify your worships, that pursuant to your directions in the annexed commission to us given, we gave public notice of our meeting on the lands called *Kirkham* and *Harrington*, to examine evidence relating to the bounds, &c. according to an act of assembly in this case lately made and provided; that on the 2d day of November 1745, we met on the said lands; that at the same time and place *Perry Benson, John Lockerman* and *James Condon,* were the only evidences to us produced whose depositions are hereunto annexed. We further certify, that a locust post put down to ascertain the place where *James Condon* proves the second tree of *Kirkham* to have stood, stands four perches East from the said place. In testimony whereof," &c. signed and sealed by the said two commissioners on the 12th of November 1747. There was indorsed on the said commission, a certificate of the said two commissioners having been "duly qualified according to law," on the 21st of June 1745, before a justice of the peace. The defendant proposed to offer the said commission and return in evidence to the jury, only to prove that such commission had issued and been executed in some manner, and returned by the commissioners and recorded, and that there were at that time such persons living who were named *James Condon, John Lockerman* and *Perry Benson,* and that they had been examined on that commission, without proposing to read to the jury their depositions as returned with the said commission.

CHASE, Ch. J. The Court are of opinion, that the defendant may read in evidence the record of the *commission itself,* merely to prove such commission had been issued, but that no other part of the record shall

be read, not even to prove that it had been exe-cuted in any manner whatever, or that it had been returned, or that *James Condon, John Lockerman* or *Perry Benson,* or either of them, had been sworn or examined on the said commission, or that such men, or either of them, were then living, or had ever lived.

Depositions taken under a land commission defectively executed not permitted to be read in evidence; and the jury instructed that the record of the depositions and the application to have them read, and the court's refusal are not to be considered as evidence that the commission had been executed in any manner or had been returned or that the depositions of certain persons had been taken, or were then living or had ever lived

3. The defendant did then read in evidence to the jury so much of the said record as contained the commission itself. And afterwards immediately offered to read to the jury the *depositions* in the said record contained, and certified by the said commissioners in their return to the said commission, to have been taken by and sworn to before them on the execution of the said commission—to which the plaintiff objected, because it did not appear by the said return, that the commissioners had given the notice required by law, in order to entitle the said depositions to be read.

CHASE, Ch. J. The Court refuse to let the said depositions be read in evidence, and they instruct the jury, that the said record and the said application made to the court for liberty to read the said depositions, and their refusal to have them read ought not to be by them considered as evidence that the said commission had been executed in any manner, or had been by the commissioners returned, or that even the depositions of the said *Condon, Lockerman* or *Benson,* or either of them, had been taken before them on the said commission, or that they, or either of them, were then living or had ever lived.

The record of a land commission defectively executed, not permitted to be given in evidence to show that a person of whom evidence was offered was not the person examined by the commissioners

4. The plaintiff gave evidence, that there was one *James Condon* who was supposed to be about the age of *Francis Baker,* who was born in 1738.

Whereupon the defendant, as a further reason, prayed he might give the said record in evidence to shew that *James Condon* last mentioned was not the *James Condon* examined by the said commissioners.

CHASE, Ch. J. The court are of opinion that the said record shall not be given in evidence even for that purpose. The defendant excepted.

*Harper* and *J. Bayly*, for the Plaintiff.

*Martin*, (Attorney General,) and *Bullitt*, for the Defendant.

Verdict and judgment for the defendant; and the plaintiff appealed to the Court of Appeals.

*Harper*, for the appellant. The question in this case depends entirely upon the true location of *Kirkham*, for which the defendant took defence.

On the 26th of July 1659, *Harbour Rouse* was surveyed for *Anthony Griffin*. On the 26th of July 1659, *Harryton* was surveyed for *Henry Morgan*; and on the 28th of July 1659, *Kirkham* was surveyed for *Martin Kirke* and *John Hill*.

It is upon the construction of the certificate and grant of this last survey that the question arises. The appellant contends, that the general court ought not to have given any direction to the jury, under the decision in the case of *Dorsey's Lessee vs. Hammond*, in this court, (*ante* 190). By the expressions in the grant the land is stated to lie *"next adjoining* the land of *Henry Morgan."* This expression is repugnant to the course and distance, which runs it across the land of *Henry Morgan*, called *Harryton*. It is said to be bounded on the west by *Henry Morgan's* land. How can it be bounded by that land when it runs through it? The expression, *"bounded by,"* means a long side and cannot mean that it shall run through it. This is as much a case of double location as the expressions in the grant of *Cole's Harbour*, in the case of *Helms vs. Howard*, (2 *Harr. & M·Hen.* 57.) In that case the prayer to the court was, that the course should run W. 320 perches, disregarding the binding expressions on the river. The court said it was a double location, and should therefore be left to the jury. That was much less strong than the present case. The ambiguity there only appeared on locating the land; for until then, it did not appear that the binding expression, and the course and distance were contradictory. But in this case it is impossible to reconcile the expressions. The tract cannot be bounded on the

west by *Morgan's* land, and run across it at the same time. A call means any visible object which is to shape the line, or by which the course may be directed—an object which may designate the location. To run along a river is a call; why then is not to run along a line of another tract equally a call? When it is said to be bounded on the west by *Morgan's* land, it is a call, which must be regarded in preference to course and distance. It is a call as much as if it had been to a tree, a branch, or to any other object. Since the case of *Helms vs. Howard* the general court had adopted a different principle from the one there established; but the court of appeals have restored that which was first established in that case. They did so in the case of *Dorsey vs. Hammond.* There is nothing in this last case which makes it a stronger one of double location than the present. There the first course of *Dorsey's Search* had a binding expression; in the other courses the binding expression was not used. To make it a contradictory location it was necessary to say that the binding expression in the first course did not apply to the other courses. The general court said they did not apply; but this court determined that it ought to have been left to the jury. The grant of *Dryer's Inheritance* also, in the case of *Dorsey vs. Hammond,* after using expressions binding the land on the river, says, "*then by a straight line to the beginning.*" The general court decided that this was not a case of a doubtful location; but this court reversed that judgment, and said the location should have been left to the jury. The present case therefore comes fully up to the principle there established. In the case of *Davis's* Lessee *vs. Batty(a),* the tract of land in dispute was *Selby's Marsh.* It began at the side of a river, then run out into the woods, then certain other lines, then to the land of *Watkins* and *Hazeling,* and *then with the said land.* The general court decided, that the last line should run with the meanders of the river to the beginning, and not a straight line. This court reversed that decision, upon the

(a) Vide *Post.*

APRIL 1802

Gibson
vs
Smith

same ground which induced them to reverse *Dorsey vs. Hammond*, that it ought to have been left to the jury. It appears that *Harbour Rouse* and *Harryton*, were surveyed only two days before *Kirkham*, the surveyor therefore could not possibly have intended to run the latter tract foul of the other two. There is manifestly a mistake. Instead of taking the first course, it is evident he run the second. It is therefore clearly a question for the decision of the jury.

*Martin*, (Attorney General,) and *Key*, for the Appellee. The *first* line in the grant of *Kirkham* has a call. The court directed the jury to run to the call, and they had a right so to direct them. It is a well established principle in the law of ejectments, that the call, where there is one, must govern the course and distance. The *second* line runs course and distance, and has no call which can have any effect to control its course or distance, or extend or diminish its length of line. And where there is no call, it is also a well established principle, that the course and distance must govern. As to this line then, there can be no doubt but the direction given by the court was right. The *third* line is to run "until it intersect a parallel drawn from the land of *Henry Morgan.*" There is nothing to vary the course of this line; there is nothing to restrain it; and having a call, it must reach that call. The reaching the call does not divert it from its course. The court did not undertake to direct the jury where the parallel was, but left it to them to ascertain that fact from the evidence, and wherever the jury should find it to be, directed them to run the line according to the course expressed in the certificate, until it should intersect such parallel, and there to terminate. The direction given is completely within every principle established by this court. But it has been suggested, that there has been a mistake made by the surveyor. Suppose there was, can the jury give a different location than that which appears in the grant. Can they give that location which they may suppose the surveyor intended to give, contrary

to the expressions in the grant? If there is a mistake, it should have been rectified by the judges of the land office before the grant issued. In the case of *Helms vs. Howard,* the court refused to admit evidence of a tree, to control the line, where no tree was called for in the line. This case is very distinguishable from *Helms vs. Howard,* and *Dorsey vs. Hammond.* Here there are no binding expressions in the grant of the land called *Kirkham;* for the expression "*next adjoining,*" does not necessarily mean *running with.* If it had been half a mile from the line, it would have been *next adjoining;* which expression is no more than a general description. Beginning at the second boundary of *Morgan's* land, is sufficient to answer the general description, *next adjoining.* The prayer made by the plaintiff in the court below, was certainly contrary to the authorities cited by him here. He prayed the court to direct the jury, and because they did not give the direction prayed by him, he now contends that they had no right to give any direction at all, but should have left it to the jury. In the case of *Dorsey vs. Hammond,* it was contended that there was a continuity of the binding expression in the grant of *Dorsey's Search.* The direction of the general court was right as to the first line; but they rejected the binding expression in the other lines. That opinion was overruled by this court, because there was *ambiguity in the expressions,* and therefore they ought to have left it to the jury. So also in the same case, with respect to the grant of *Dryer's Inheritance,* the general court rejected the binding expression, and directed that a straight line should be run to the beginning. These were also deemed by this court ambiguous expressions, and therefore proper for the consideration of the jury. In the case of *Helms vs. Howard,* the ambiguity arose upon the very line itself which was in dispute. The expressions in the grant were "*running to the gut, and over the gut west 320 perches, binding on the N. W. branch.*" If the line run its west course it could not run to the gut, over the gut, nor bind on the N. W. branch. The ambi-

guity arose upon the expressions made use of in the line. It was properly left to the jury by the court. Here there is nothing to control the running of the third line, but the parallel, and the only possible doubt is in that line. In the second line, the expressions are clear and unequivocal. In the case of *Davis vs. Batty,* there was no home line at all, and the question was, whether it should follow the meanders of the river, or run home with a straight line. This court said it was a matter for the jury to decide.

*Harper* and *Bayly,* in reply. At the time these surveys were made, surveyors were ignorant men, and often only viewed the land, instead of making a particular survey. From the expressions used in the certificates of the three tracts of land, *Harbour Rouse, Harryton* and *Kirkham,* it was the intention of the parties that they should lay along side of each other, and run the same distance from the river into the woods. This appearing to be manifestly the intention, is it possible that the tract called *Kirkham* can run across *Morgan's* land called *Harryton,* and take up a piece of vacant land on the opposite side? If it appears from the grant that *Kirkham* is to have a particular situation, that it is to lie along side of *Harryton,* it must be so located, and the course and distance must be disregarded; because when an object is called for, the course and distance are to be disregarded, unless there is no proof of the call. By the location made by the appellee, no part of the description is gratified. The call is in the description of the land. In the location of the land *"until it intersect a parallel drawn from the land of Henry Morgan, then on the W. with said land and parallel,"* the parallel must extend far enough to meet the line, and then the line is to bind with the parallel, and the line of *Morgan's* land. It is said, that in the cases of *Helms vs. Howard,* and *Dorsey vs. Hammond,* the ambiguity appeared in the line itself. In construing an instrument every part of it must be taken into consideration. Suppose a grant says a line shall run

to a tree, and in another part says the same line shall run to a different place, can this be less an ambiguity because it arises from the whole of the grant taken together, than if it appeared in one of its lines? The only question here is, whether or not the expressions in the grant are doubtful? If there is any doubt, it must be left to the jury, and it is wholly immaterial whether the court below decided right or wrong upon the plaintiff's prayer. If they ought to have left the question to the jury, it was wrong in them not to have done so, and therefore their judgment should be reversed.

THE COURT OF APPEALS *affirmed* the judgment of the General Court, at November term 1804.

———❧———

## GENERAL COURT, MAY TERM, 1802.

### DAVIS *et al.* Lessee, *vs.* BATTY.

EJECTMENT for a tract of land called *Brown's Discovery,* lying in Anne-Arundel county. Defence on warrant, and plots returned.

1. The plaintiff at the trial produced and read in evidence to the jury, a certificate of survey and grant of the tract of land called *Brown's Discovery,* the former dated the 19th of July 1762, and the latter dated the 9th of June 1764, founded upon a special warrant granted to *William Brown* for 50 acres of vacant land; and proved that the said land is located on the plots in this cause, beginning at the figure 1. He also read in evidence a deed of bargain and sale, dated the 19th of May 1769, from *Samuel Chase,* and *William Brown,* the patentee, to *Robert Davis,* for the said land, and offered evidence that *Robert Davis* died intestate, leaving *Robert Payne Davis* his heir at law,

*The commissioners appointed under the land law of 1715, ch. 45, acted judicially, and their judgment is conclusive between the parties, unless reversed on an appeal; and as between strangers the proceedings are evidence in the same manner that hearsay is admissible to prove the bounds of land.*

*The deposition of a witness taken under a land commission legally executed, cannot be read in evidence unless there is proof of the death of the witness.*

*Where a grant describes the tract of land as lying on the W. side of Chesapeake bay, and on the W. side of S. river of that bay, beginning at a marked oak standing near a marsh of the said river, called Selby's Marsh, bounding on the E. with a line drawn N. W. and by N. from the said oak, &c. (sundry courses having calls) unto the land of J W. and then with the said land, containing, &c. Held by the court of appeals to be ambiguous, and therefore left to the determination of the jury—thereby dissenting from the decision made by the general court in this case.*

*The allowance for the attendance of a witness, who was subpœnaed, but not sworn at the trial, is not to be taxed in the costs, unless directed by the court, on application,*